Kenneth C. WILLIAMS et al., Appellants,

v.

W. M. A. TRANSIT COMPANY, Appellee.

No. 5139.

District of Columbia Court of Appeals,

Argued May 11, 1970.

Decided July 28, 1970.

Stanley O. Sher, Washington, D. C., with whom Michael G. Kushnick and Leonard N. Bebchick, Washington, D. C., were on the brief, for appellants.

William B. Devaney, Washington, D. C., with whom Stanley H. Kamerow, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

HOOD, Chief Judge:

Appellants, all employed by appellee as bus drivers, brought this action [1] under the District of Columbia Minimum Wage Act of 1966, D.C.Code 1967, § 36–401 et seq., to recover from appellee overtime compensation for all hours worked in excess of 40 hours per week. On the basis of appellee's answer, appellants' request for admissions and interrogatories and the answers thereto, the trial court granted appellee's motion to dismiss the complaint and denied appellants' motion for summary judgment.[2] In so doing the trial court reasoned that, "[s]ince a great majority of defendant's vehicles move in interstate commerce, defendant is subject to regula-

1. This suit was filed initially in the Court of General Sessions and then was filed again in the United States District Court for the District of Columbia. The record is not clear as to why the suit did not continue in the Court of General Sessions. However, appellee's motion to dismiss the complaint in the District Court was granted and the judge ordered the case transferred back to the Court of General Sessions.

2. The trial court treated appellee's motion to dismiss the complaint as a motion for summary judgment and in making its decision the court considered the District Court record, including appellants' motion for summary judgment.

tion by the Department of Transportation pursuant to the provisions of the Interstate Commerce Act (49 U.S.C. 301 et seq.)" and the District of Columbia Minimum Wage Act "has no application with respect to plaintiffs herein."

Appellee has its offices and facilities located on Southern Avenue just across the District line in Prince George's County, Maryland. It operates buses on regular routes serving passengers in Maryland and the District of Columbia. It also operates buses as a charter service, transports school children in the District of Columbia and performs some services under government contract. Appellee's buses travel 84 regular routes, of which 79 enter the District of Columbia though some of these routes do not enter the District for more than a short distance. The percentage of time spent in the District of Columbia by each appellant varies greatly but a study by appellee revealed that the appellants spend, on the average, 37.6% of their working time in the District of Columbia.

On this appeal appellants' chief contention is that the trial court erred in finding that the overtime requirements of the District of Columbia Minimum Wage Act did not apply to them in their capacity as bus drivers.

In enacting the District of Columbia Minimum Wage Act of 1966 (hereafter referred to as Act),[3] Congress intended to alleviate social and economic conditions existing in the District of Columbia caused by insufficient wages.[4] As stated in the Senate Report accompanying H.R. 8126:

> The people to be directly helped by this proposed legislation are what may be called the working poor who work at the most arduous and menial tasks. They are the dishwashers, busboys, short order cooks, carwashers, domestic workers, janitors, porters, cleaners, and hospital employees. They are hard-working people who provide worthwhile and necessary services. Many of them are the heads of families who find it difficult on such substandard wages to provide adequate food, clothing, shelter, and medical care for their families. They are not members of unions and are unable to bargain for a decent wage.[5]

To attain this end, the Act brought within its coverage many workers not then presently covered by federal or local laws, provided overtime protection, improved the minimum wage standards and improved the method of enforcement from that provided in the 1918 Act.[6]

The Act contains its own definitions of the terms it utilizes. Most crucial to this case is the definition of the term: "employee". Though this term is somewhat broad by definition,[7] it is ambiguous when applied to the present factual situation. From a mere reading of this term we do not know whether an individual who is engaged in interstate commerce as a bus driver and works part of his time in the District of Columbia is an "employee" within the scope of the Act. We therefore look to the legislative history of the Act.

Congress, in exercising its legislative power for the District of Columbia, acts as a National Legislature and is limited in its enactments only by "those pro-

---

3. This Act amended the District of Columbia Minimum Wage Law of Sept. 19, 1918. D.C.Code 1961, § 36–401 et seq.

4. D.C.Code 1967, § 36–401.

5. S.Rep.No.864, 89th Cong., 1st Sess. 2 (1965).

6. *Id.* at 261–262.

7. D.C.Code 1967, § 36–402 provides:
   (5) The term 'employee' includes any individual employed by an employer * * *.

hibitions of the Constitution which act directly or by implication upon the federal government".[8] It could have included within the definition of "employee" all bus drivers engaged in interstate commerce who spend any part of their working time in the District of Columbia. However, a review of the legislative history of the Act leads to the conclusion that Congress did not intend such situations to be covered by the Act.

In fact, all indications are to the contrary. Senator Morse, floor manager of the bill in the Senate, Senator Javits and Congressman Multer, the House District of Columbia Subcommittee Chairman before whom the hearings on the Act were held, all indicate in their statements that Congress was not exercising its full plenary powers over the District of Columbia but was acting only as any State legislature would in passing a minimum wage law.[9] Thus in our opinion Congress extended the coverage of the Act only to those individuals working entirely within the District of Columbia.[10]

The only reference to bus drivers is found in the hearings before the House Subcommittee:

> Miss Allgood. * * * Reported as working in the District in private industry in the quarter ending September 31, 1964, were 281,035 employees.
>
> Mr. Abernethy. There are secretaries, clerks, stenographers, janitors, charwomen?
>
> Miss Allgood. They are everybody in private industry.
>
> Mr. Abernethy. Bus drivers?
>
> Miss Allgood. You are thinking about who will get a raise. But this includes construction, transportation, wholesale trade * * *.[11]

We find transportation referred to again in H.R.Rep.No. 552, 89th Cong., 1st Sess. 2 (1965) where the coverage of the Act, by industry, is outlined. Lumped together as one industry are: "Transportation, communications, utilities." There is no breakdown as to what "transportation employees"

8. Neild v. District of Columbia, 71 App. D.C. 306, 310, 110 F.2d 246, 250 (1940).

9. Mr. Javits. * * * What this proposal really amounts to is a State minimum wage law. 112 Cong.Rec. 750 (1966) (remarks of Senator Javits).

   *　　*　　*　　*　　*

   Mr. Morse. * * * The Senator from New York is correct when he says that what we are doing in effect today is passing a minimum wage bill as a State legislature. Our problem is that we really should not be the ones doing this, but we have to do it because we have not had the wisdom in the past to provide for a home rule government in the District of Columbia so others would be passing this legislation. 112 Cong.Rec. 750 (1966) (remarks of Senator Morse).

   *　　*　　*　　*　　*

   Mr. Multer. The thinking of the Commissioners is, insofar as the District of Columbia is concerned, that you treat it as though this were intrastate, the same as a State would handle it, and those matters which should not be, or

are not, the subject of national legislation, are handled on an intrastate basis, and to that extent the District of Columbia is being considered by the Commissioners as though it were a separate and distinct entity; isn't that so?

   Miss Allgood. That is correct. Hearings on H.R. 648 and H.R. 6494. Before Subcommittee No. 3 of the Committee on the District of Columbia, 89th Cong., 1st Sess. 83 (1965).

10. See 112 Cong.Rec. 25160 (1966) (remarks of Senator Morse); 112 Cong.Rec. 748 (1966) (remarks of Senator Morse); Hearings on H.R. 648 and H.R. 6494 Before Subcommittee No. 3 of the Committee on the District of Columbia, 89th Cong., 1st Sess. 23–24 (1965); Hearings on H.R. 8423 Before Subcommittee No. 3 of the Committee on the District of Columbia, 88th Cong., 1st Sess. 41–43 (1963).

11. Hearings on H.R. 648 and H.R. 6494 Before Subcommittee No. 3 of the Committee on the District of Columbia, 89th Cong., 1st Sess. 33–34 (1965).

**264**

are included within the Act's coverage. Other than these references to transportation, we find nothing in the history of the Act to indicate Congress ever considered bus drivers working in interstate commerce as being within the Act's coverage, especially since Congress was acting as a State legislature in passing the Act.[12]

 In 1960 when Congress gave its approval to Virginia, Maryland and the District of Columbia "to enter into a compact * * * for the regulation and improvement of mass transit in the Washington metropolitan area, * * *."[13] it also provided "[t]hat nothing herein shall be deemed to render inapplicable any laws of the United States providing benefits for the employees of any carrier subject to this compact or relating to the wages, hours, and working conditions of employees of any carrier * * * including, but not limited to, the Labor-Management Relations Act, 1947, as amended, and the Fair Labor Standards Act, as amended."[14] Though the laws of the three signatories "relating to or affecting transportation subject to this Act" were to be suspended, the compact exempted from this suspension the laws of the three signatories relating to the "wages and hours of employees".[15] Congress recognized that some transit employees would work entirely within a signatory jurisdiction and would remain subject to local law while others would be engaged in interstate commerce by working across jurisdictional boundaries and would remain subject to applicable federal laws. The compact has not been amended since the passage of the Act to reflect any change in Congressional intent and the Act itself, as indicated by its legislative history, continues to reflect the Congres-

sional intent that the wages and hours of those individuals working in the transportation field solely within the District of Columbia are subject to the law of the District of Columbia, but the regulation of the wages and hours of those individuals engaged in the interstate commerce aspect of transportation is not to be controlled by the District of Columbia law. In view of our holding we need not decide whether appellants are covered by the Fair Labor Standards Act or the Interstate Commerce Act.

Affirmed.

---

12. By way of comparison we note that Congress, in the District of Columbia Unemployment Compensation Act, D.C.Code 1967, § 46–301 et seq., included within the definition of "employment" (with certain limitations), services performed by individuals in interstate commerce. It would not have been difficult for Congress, if it intended to do so, also to have in-

cluded individuals engaged in interstate commerce, as are appellants here, within the coverage of the Act.

13. D.C.Code 1967, § 1–1410.

14. D.C.Code 1967, § 1–1412.

15. Act of Sept. 15, 1960, Pub.L.No. 86–794, Art. XII, § 20(a), 74 Stat. 1048.