**DISTRICT OF COLUMBIA et al.,**
**Appellants,**

v.

**SCHWERMAN TRUCKING COMPANY,**
**Appellee.**

**DISTRICT OF COLUMBIA et al.,**
**Appellants,**

v.

**DIENER'S LINOLEUM AND TILE CO.,**
**INC., Appellee.**

**Nos. 6412 and 6502.**

District of Columbia Court of Appeals.

Argued Sept. 11, 1972.

Decided Oct. 31, 1974.

Rehearing en Banc Denied Feb. 7, 1975.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the briefs, for appellants in No. 6412 and No. 6502.

John J. McAleese, Jr., Philadelphia, Pa., pro hac vi̧ce, of the Bar of the State of Pennsylvania, and Clyde E. Herring, Washington, D. C., for appellee in No. 6412.

Edward J. Dempsey, Washington, D. C., for appellee in No. 6502.

Before REILLY, Chief Judge, and FICK-LING and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

The questions presented by these appeals are whether the overtime provisions [1] of the Minimum Wage Act, D.C.Code 1973, § 36–401 et seq., (herein "the Act") have any applicability (1) to persons who report for work in the District of Columbia, but whose employment assignments are performed partly within and partly outside the District, or (2) to persons, irrespective of place of employment, if their maximum hours of service are subject to regulation by the Secretary of Transportation. More precisely, the first question is whether a District employer in computing hours worked in any given week must include in such total any hours spent in his employment by a particular employee beyond the District line. In these cases the government, as assignee in trust [2] for designated employees claiming unpaid overtime under the Act [3] brought actions against their respective employers for overtime wages allegedly due them.[4]

---

1. D.C.Code 1973, § 36–403(b)(1)(B), provides that employees shall be paid at rates not less than one and one-half times the regular rates at which they are employed for all hours worked in excess of forty hours per week.

2. D.C.Code 1973, § 36–415(b), provides that any wage claims under that subchapter may be assigned in trust to the District, which is then empowered to take any legal action necessary to collect them.

3. No. 6502 was initially filed in the United States District Court for the District of Columbia and later certified to the Superior Court. No. 6412 was originally filed in the District of Columbia Court of General Sessions, now the Superior Court.

4. The District government is also seeking an equal amount representing liquidated damages despite our previous admonition that the inclusion of such sum seems to be limited to statutory actions in which the employees are

The parties entered into stipulations from which it appears that the claimants in both cases reported for work in the District but as part of their normal duties, either loaded or drove trucks which regularly left this jurisdiction, thus requiring the drivers or the helpers who rode the trucks to spend part of their work day or work week in the contiguous states of Virginia and Maryland. In each case the parties filed cross motions for summary judgment in the respective trial court. On the authority of our decision in Williams v. W. M. A. Transit Company, D.C.App., 268 A. 2d 261 (1970), the employers' motions were granted and the actions dismissed.[5] The government thereafter noted appeals and we consolidated the cases for argument and disposition because of common legal issues presented.

In the *Williams* case the issue was whether drivers of commuting buses who started their routes in nearby Maryland but spent an average of 37.6% of their trip time in picking up and delivering passengers inside the District, were covered by the 40-hour work week and overtime provisions of the Act. After examining the legislative history of the Act, this court concluded in an opinion written by Chief Judge Hood that ". . . Congress was not exercising its full plenary powers over the District of Columbia but was acting only as any State legislature would in passing a minimum wage law." 268 A.2d at 263, footnote omitted. Accordingly, the court held that the plaintiffs in that case were not entitled to recover, as it was not the intent of Congress to cover such employees under the Act.

Because of the breadth of that holding the correctness of the trial court's disposition of these cases, insofar as they dealt with employees on work assignments performed outside the District, would be beyond challenge except for an intervening decision of the United States Court of Appeals for the District of Columbia Circuit. That court, prior to the effective date of the Judicial Reorganization Act,[6] granted plaintiff's application for leave to appeal in the *Williams* case. Then, some two years later and subsequent to the judgments in these cases the court, in an opinion written by Judge Leventhal, reversed our holding. Williams v. W. M. A. Transit Company, 153 U.S.App.D.C. 183, 472 F.2d 1258 (1972). The circuit court conceded that this court was "correct insofar as its approach sought some territorial limitation on the definition of employer and employee." *Id.* at 189, 472 F.2d at 1264. It went on to hold nevertheless that the Act covers any employee who regularly spends more than 50% of his work time in the District, whether or not his employment is based in the District, and any employee whose employment is based in the District and who spends a substantial amount of his work time there, but does not regularly spend more than 50% of his work time in any particular state or the District.

■ This opinion has created an anomalous situation. Not published for more than a year after the effective date of the Judicial Reorganization Act and at a time when the author of the opinion conceded that this court had final authority to interpret a District of Columbia enactment, the opinion does not constitute controlling

the actual plaintiffs. *See* District of Columbia v. Diener's Linoleum and Tile Co., D.C. App., 278 A.2d 684 (1971). In Johnson & Jenkins Funeral Home, Inc. v. District of Columbia, D.C.App., 318 A.2d 596 (1974), we resolved that question by holding that the provisions of the Act authorizing an award of liquidated damages may not be invoked when the action is brought by the government.

5. The trial judge in No. 6502 also relied on the trial court's decision in No. 6412, which had been handed down a few weeks earlier,

and had been unofficially reported. District of Columbia v. Schwerman Trucking Co., 100 Washington Law Reporter 601 (1972).

6. Title I, Act of July 29, 1970, Pub.L.No.91–358, 84 Stat. 473. Prior to its effective date, decisions of this court were subject to review in the United States Court of Appeals for this circuit on petition for allowance to appeal. Since that date decisions of this court are final, being reviewable only by the United States Supreme Court. D.C.Code 1973, § 11–102.

precedent for this court, although binding on the parties to the litigation.[7] *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971). Nevertheless, because of the extensive analysis of the authorities made by Judge Leventhal in reaching his conclusion, and because of intervening legislative developments in Congress cited by the litigants in the cases now before us as supporting their opposing views, we have deemed it appropriate to reexamine the basis of our *Williams* decision and to deal with an issue which we did not reach in that case, *viz.,* the asserted exclusion from the overtime provisions of the D.C. Minimum Wage Act of employees subject to hours of service regulations under the Federal Motor Carrier Act. 49 U.S.C. § 304. Having rejected this court's view that the Minimum Wage Act covered only persons employed full time within the District, the circuit court was compelled to come to grips with this issue. It decided that because the local Act, unlike the federal Fair Labor Standards Act,[8] does not contain such an exemption, Congressional intent to exclude motor carrier personnel could not be inferred.

In the case before us, both employers assert (and the government apparently concedes) that the claimants fall within that class of employees with respect to whom the Secretary of Transportation ". . . has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." 49 U.S.C. § 304. As such, they are exempt from the overtime provisions of the Fair Labor Standards Act by reason of the express provisions of § 13(b) of that statute. 29 U.S.C. § 213(b)(1). Although the corresponding provision of the local act, D.C.Code 1973, § 36–404, does not contain this particular exemption, the employers urge us to hold that

Congress intended the same exemption in the local Act, notwithstanding the contrary views of the circuit court in *Williams, supra.*

The record makes it clear that the employer in No. 6412, Schwerman Trucking, has standing to raise this issue, for the stipulation of the parties shows that this appellee is a common carrier of bulk commodities holding certificates as such under the Motor Carrier Act. Its local operation consists of transporting building materials from the Lone Star Cement terminal on the Potomac waterfront to construction sites in the District, Maryland, and Virginia. The stipulation in No. 6502 does not expressly say that Diener's Linoleum is subject to regulation under the Motor Carrier Act. The employees involved load and operate delivery trucks of their own company, as distinguished from vehicles of contract or common carriers.[9] Their duties include the laying of tile and other flooring in the residences of customers in the metropolitan area, including houses situated beyond the District line. In view of the fact that the briefs of the government make no differentiation between the businesses of the two employers, we shall treat both cases alike in considering the Motor Carrier Act issue.

In doing so, we note that if this exemption is implicit in the local wage act, it would exclude from the overtime provisions a much broader class of employees than those who spend a portion of their work week in assignments outside the District. A pickup from or delivery to a railhead, a waterfront dock, or a truck terminal where shipments in interstate carriage are interlined, brings such cartage within the ambit of Section 204 of the Motor Carrier Act even though all such trips can be completed inside the District and assign-

---

7. We note in passing that the impact of the *Williams* decision on the particular industry concerned has become academic, as local transit companies are no longer privately operated, having been absorbed into the public system popularly called "Metrobus."

8. *See* 29 U.S.C. § 213(b)(1).

9. Under certain conditions, the Department of Transportation does have the power to impose hours of service regulations upon private carriers. 49 U.S.C. § 304.

ments to such trips amount to less than four percent of any driver's working time. Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). Nor would the exemption be limited to ambulatory personnel like drivers, for the statutory reach of the Department of Transportation extends to loaders, mechanics, checkers, and certain clerical personnel concerned with safety of operations, even though their duties are performed entirely within the four walls of the building containing the garage, loading platforms, or warehouse, as the case might be. Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

The revised D.C. Minimum Wage Act, D.C.Code 1973, § 36–401 et seq., which—*inter alia*—amended the prior act to require premium pay for hours worked in excess of 40 in any week, became law on February 1, 1967. About two years later, the Corporation Counsel ruled in a written opinion that the motor carrier exemption to the corresponding provisions of the federal act did not apply to the local act. This ruling soon became a matter of controversy in Congress. In 1969, the then chairman of the House Committee on the District of Columbia introduced a bill, H.R. 15360, to amend the D.C. Minimum Wage Act by specific language exempting motor carrier personnel whose hours of service were subject to interstate commerce regulation.

The House report on the bill (H.R. 19885) which incorporated this proposal contains a lengthy statement indicating that the District Committee was of the opinion that District officials in applying the Act had misinterpreted the intent of Congress. *See* H.R.Rep. No. 91–1673, 91st Cong., 2d Sess., 60–65 (1970). In conference, however, the House conferees were forced to accept a Senate amendment before the Senate would agree to the measure.

This amendment was enacted as §§ 702 and 703 of the District of Columbia Revenue Act of 1970, Pub.L. 91–650, 91st Cong., 2d Sess., 84 Stat. 1938, approved Jan. 5, 1971. Section 703, in pertinent part, added a new definition to Section 2 of the Minimum Wage Act:

(8) The term "Washington metropolitan region" means the area consisting of the District of Columbia, Montgomery and Prince George's Counties in Maryland, Arlington and Fairfax Counties and the cities of Alexandria, Fairfax, and Falls Church in Virginia. (*See* D. C.Code 1973, § 36–402(8).)

Section 702(a) added an additional exemption to the Act's exemptions from the overtime wage provisions. After the addition of this exemption, Section 4(b) of the Act read in pertinent part:

(b) The overtime provisions of section 3 shall not apply with respect to—

\* \* \* \* \* \*

(6) any employee (A) with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of part II of the Interstate Commerce Act, and (B) who is not employed for more than 50 per centum of any workweek within the Washington metropolitan region.

On appeal, the government attaches significance to language in the accompanying report making the 1971 amendment retroactive to February 1, 1967, the date the local minimum wage act went into effect. The conference report stated:

The conference substitute provides that the employees exempted by the House bill from the District of Columbia overtime requirements *will be* exempted from such requirements in any work week if in such work week such employees were not employed for more than half of such work week within the Washington metropolitan area . . . The exemption, as in the House bill, is made retroactive to February 1, 1967.

(H.Conf.Rep. No. 91–1789, 91st Cong., 2d Sess., 16–17 (1970); emphasis supplied).

Less than a year later, the House attempted again to obtain a plenary exemption for motor carrier personnel by including in the D.C. Revenue Act of 1971, a provision which would have—

. . . amended paragraph (6) of section 4(b) of the District of Columbia Minimum Wage Act to exempt interstate motor carriers domiciled in the District of Columbia from regulations imposed by the Wage and Hour Board of the District of Columbia if the carrier was subject to regulation by the Secretary of Transportation under section 204 of part II of the Interstate Commerce Act. . . . (H.Conf.Rep. No. 92–740, 92nd Cong., 1st Sess., 7 (1971).

The Senate struck out this provision and in conference it was agreed to repeal the limited exemption adopted 11 months earlier. Thus, in § 708 of the District of Columbia Revenue Act of December 15, 1971 (effective Jan. 1, 1972), Pub.L. 92–196, 92nd Cong., 1st Sess., Congress repealed Section 4(b)(6) of the local minimum wage act, thus making Section 4 of that statute[10] read as it did when first passed in 1966.

Some of the House spokesmen explained this action as a reinstatement of the original [implicit] "exemption" of motor carrier personnel, but on the Senate floor Senator Eagleton, who headed the Senate conferees, said:

There is [sic] presently matters relating to this act [the District of Columbia Minimum Wage Act] which are in the courts and it was not the intention of the conference to legislate retroactively to determine the intention of Congress in 1966 when it passed these amendments.

\* \* \* \* \* \*

There are two other provisions in the conference agreement which should be called to the attention of the Senate.

The first provision relates to the overtime exemption of certain categories of employees relating to the trucking industry specifically section 707. Section 707 of the conference substitute amends the District of Columbia Minimum Wage Act to remove from that act an exemption from overtime pay for certain drivers, drivers' helpers, loaders, and mechanics. These employees will now be entitled to overtime compensation as they were prior to the adoption of the exemption. (117 Cong.Rec.Senate 21194, Dec. 10, 1971.)

■ We have summarized at some length the legislative history of these two enactments in 1971, culminating in the first session of the 92nd Congress, because the opposing parties in both cases—somewhat paradoxically—regard these developments as supporting their respective positions. Notwithstanding these arguments, however, it is fairly obvious that neither of the 1971 amendments cited has much bearing on the matter, for the net result was to return the list of exemptions in Section 4 of the Minimum Wage Act to its original 1966 text. Moreover, even if the outcome of the House proposals had been less inconclusive, we doubt that it would have been dispositive of the cases now before us. The actions brought by the government are based on claims arising out of employment in 1968 and 1969, not in the 1970–71 period. It is always dangerous to deem a measure passed by a later Congress as a reflection of the legislative intent of an earlier one, unless such measure, unlike either of the 1971 amendments, contains express retroactive provisions.

■ Accordingly, we think the answer to the question of whether the motor carrier exemption in the federal wage hour act of 1938 was also intended to apply to the D.C. act of 1966 rests entirely upon an appraisal of Congressional intent at the time the latter statute was enacted. In revising the earlier local act in 1966, Congress lift-

---

10. D.C.Code 1973, § 36–404.

ed bodily from the federal wage-hour statute numerous provisions *in haec verba*. Thus, where departures were made from wording in the corresponding sections of the parent act, conscious intent may be inferred.

■ The draftsmen of Section 4 of the local act had as their model Section 13 of the federal act,[11] which enumerates the categories of employees in different industries not covered by the overtime provisions. They adopted several of these, notably the exemptions for executive, administrative, and professional employees, outside salesmen, railroad employees, seamen, newsboys, but when they came to motor carrier personnel, they omitted the relevant language of the federal act and inserted some new categories granting limited exemptions to specified classes of auto mechanics, car washers, and garage attendants. Nothing was said either in the conference report or on the floor of either house by the managers of the bill to explain this deviation. Accordingly, we must infer that the failure to exclude from the overtime coverage of the D.C. Act, the kind of motor carrier personnel defined in Section 13 of the federal act was deliberate. In this respect, we agree with the *Williams* opinion of the circuit.

We turn now to the issue on which the *Williams* decision in this court turned  As we see it, such issue is whether or not hours worked by a particular employee outside the District in any given workweek must be included in determining his right to overtime pay. Under our holding in *Williams,* such hours would not be counted. The District government's position in these cases is that all hours of employment must be counted, irrespective of where the work is performed, provided the employer maintains a place of business in the District and the employee reports there. In an amicus brief, this thesis was also urged when our *Williams* decision was appealed, but the circuit rejected this contention as too broad, exceeding "the likely sense of Congress." 153 U.S.App.D.C. at 190, 472 F.2d at 1265.

Recognizing that some kind of territorial limitation must be applied to state wage and hour laws when coverage is asserted with respect to persons working in more than one state, the circuit court—noting a dearth of state court rulings on this problem—devised a new interpretation for the words "employed . . . in the District of Columbia." It found guidance not only from the "ordinary and natural meaning" of these words, but also "from the practicalities of the situation, which require a reasonably commonsense rule which can be applied with reasonable simplicity by area businessmen."[12]

It is not surprising that there is a dearth of judicial rulings on the applicability of state laws to persons working in more than one state,[13] for the coverage of the Fair Labor Standards Act is so broad that the right of such persons to time and one-half for all hours worked for the same employer in excess of 40 per week is largely academic. Unless his occupation falls within one of the narrowly limited exempt categories, such an employee is entitled under the federal act to have all his hours in any given workweek credited to him for purposes of overtime pay. Hence a person hired to work here by a retail, construction, or service company handling commod-

---

11. 29 U.S.C. § 213.

12. These words do not appear in the definition section, but were apparently excerpted from the first sentence of the preamble of the Act, which reads:

The Congress hereby finds that there are persons employed in some occupations in the District of Columbia at wages insufficient to provide adequate maintenance and to protect health. *See* § 36–401.

13. The record shows, however, that there have been administrative rulings in two states, New Jersey and Maine, that local statutes could not cover carrier personnel subject to regulation by a federal agency. A contrary opinion by the Attorney General of Maryland was overruled by the state legislature.

ities shipped from other states, but frequently detailed to spend part of his work-week in retail outlets, on building sites, or other places beyond the District line, must be paid overtime for hours in excess of 40, irrespective of the local act. Thus the spectre of depriving vast numbers of employees of protection against excessive hours of work unless this court accepts the interpretation urged on it by counsel for the District in these cases is an imaginary one.

Nor are we persuaded that the formula adopted by the circuit court in its *Williams* opinion should be followed. For one thing, it poses serious problems of enforcement. Detection of violations today depends largely on the inspection of payroll records for each workweek, not upon a nebulous concept like "regularity", ascertainable at best by inquiries *dehors* such records. In short, the particular workweek would no longer be the test. This concept also seems to ignore the fact that in the kind of businesses in which the appellees before us are engaged, the number and recurrence of out-of-town assignments of the employees is dictated to a great extent by the kind of customer orders in any particular workweek. Plainly these would fluctuate from one week to the next, thus ruling out either "regularity" or the 50% yardstick as rules consistent with the "practicalities of the situation."

An even more serious shortcoming in the circuit court's approach is its failure to accord adequate consideration to a point emphasized in Chief Judge Hood's opinion, *viz.*, that in passing the 1967 D. C. Minimum Wage Act, ". . . Congress was not exercising its full plenary powers over the District of Columbia but was acting only as any State legislature would in passing a minimum wage law." Williams v. W. M. A. Transit Company, 268 A.2d at 263 (footnote omitted). This observation is amply supported in express statements by the Senate and House managers of the legislation.[14]

It may be, of course, that the further statement (to which the circuit opinion took exception) that the coverage of the Act extended only to those individuals working entirely within the District of Columbia was too broad. This statement was unnecessary to the actual holding, as none of the claimant employees in *Williams* ever worked for as many as 40 hours inside the District. In light of such holdings as West Coast Hotel Company v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1938), it is within the province of a state legislature to prescribe minimum hourly wages or a maximum daily or weekly limit on work wholly done within its borders even for part-time employees whose jobs also require them to perform tasks in other states. By the same token, those other states could impose their own (and possibly different) wage-hour regulations upon the same employees for work actually done in their jurisdictions.

Accordingly, it is our conclusion that the place of employment is the controlling factor under the Act. This means that if an employee covered by the Act, regardless of whether he is an employee subject to hours of service regulation by the Department of Transportation actually works more than 40 hours a week inside the District for the same employer, he is entitled to statutory overtime pay for all such hours. Hours worked in places outside the District borders, however, need not be credited to him for overtime pay computation.

The stipulations with regard to the respective claims in these cases are based upon a repealed provision of the Act which we are holding irrelevant. It is not clear from this record that any of the employee-claimants in these cases had worked more than 40 hours inside the District in any of the workweeks under consideration.

14. *See* 263 A.2d at 263 n. 9.

Accordingly, these cases must be remanded for such evidence as is necessary to determine this issue with respect to the individual claimants.

So ordered.

FICKLING, Associate Judge (dissenting):

The District of Columbia Minimum Wage Act (hereinafter, the Act) in its introductory portion specifies that its purpose is to ameliorate the conditions of *"persons employed* in some occupations *in the District of Columbia,"* (D.C.Code 1973, § 36–401(a); emphasis added). In the cases at bar, the employers are located in the District,* the employees report to work in the District, and the employees spend only a small portion of their working hours outside the District. It would therefore appear that these employees are in the class of persons sought to be aided by the Act.

The majority opinion, however, includes these employees within the ambit of the Act only to the extent of the hours they are *physically present in the District.* This construction of the Act means that an employee who spends one percent of his time outside the District of Columbia would not be entitled to the benefits of the Act for that one percent.

On the other hand, I would follow the definition of "employed in the District of Columbia" as enunciated in Williams v. W. M. A. Transit Co., 153 U.S.App.D.C. 183, 472 F.2d 1258 (1972), so that the Act would apply to such employees.

Under *Williams* " 'employed . . . in the District of Columbia' encompasses an employee who regularly spends more than 50% of his work time in the District." 153 U.S.App.D.C. at 190, 472 F.2d at 1265. Also included is an "employee [who] does not regularly spend 50% of his work time

in any particular state (or the District) . . . if his employment is based in the District of Columbia and he regularly spends a substantial amount of his working time in the District." *Id.* This definition does not leave a gap as the majority definition admittedly does. The majority opinion says the Fair Labor Standards Act and the minimum wage acts in other jurisdictions will fill the gap although no authority is cited to support that conclusion.

Therefore, I would follow *Williams* and have these District employees completely protected by D.C.Code 1973, § 36–403(b)(1)(B).

---

* In Williams v. W.M.A. Transit Co., 153 U.S. App.D.C. 183, 472 F.2d 1258 (1972), the court

applied the Act in a situation where the employer was *not* located in the District.