(Decided 22nd June, 1875.)

---

## Fanny A. Ellicott vs. Ambrose A. White.

*When a Specific performance will not be Decreed.*

Where the contract sought to be enforced is alleged to be one by which the defendant was to take a lease of land, and the proof shows that she contracted for the fee and for no other estate in the property, and authorized no other person to make a different contract for her, the Court will not compel her to accept a lease instead of a deed in fee, or give the complainant compensation for the non-performance of the contract.

Where there is a substantial defect with respect to the nature, character, situation, extent, or quality of the estate, which is unknown to the vendee, and in regard to which he is not put upon inquiry, a specific performance will not be decreed.

Appeal from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellee against the appellant and her husband (now deceased) and Henry

v. 43.

W. Ellicott, for the specific performance of an alleged contract, that the appellant was to take a lease from the appellee of certain land in Baltimore County. During the pendency of the cause the land was sold under a mortgage, and by a supplemental bill the complainant prayed compensation for the non-performance of the contract. The Court below (PINKNEY, J.,) passed a decree in favor of the complainant, from which this appeal is taken. The facts are sufficiently set out in the opinion of this Court.

The cause was argued before STEWART, BOWIE, GRASON, ALVEY and ROBINSON, J.

*Wm. H. Dawson* and *George H. Williams,* for the appellant.

This is an attempt to force upon a married woman (now a widow) the acceptance of a title to land under a contract which, to say the least of it, was founded on a great misapprehension upon her part,—and as specific performance is in the Court's discretion, and never decreed except when all things are fair, just and reasonable *in every respect,* it should be refused in this case. *Story's Eq.,* secs. 750, 769, 770, *&c.; Semmes vs. Worthington,* 38 *Md.,* 325.

In every sale of land a condition is implied for a good title. *Fry on Specific Performance, sec.* 224, and cases cited. And if a vendor cannot make out a title, free from reasonable doubt, his bill must be dismissed. *Fry on Specific Performance, sec.* 573 ; *Owings vs. Baldwin & Wheeler,* 8 *Gill,* 350, 351.

The bill will also be dismissed where there is a substantial defect in the estate sold, in its *extent* or quality, unknown to the vendee, and in regard to which he was not put upon enquiry. *Story's Eq., sec.* 778 ; *Malins vs. Freeman,* 2 *Keen,* 25, 34 ; *Belknap vs. Sealey,* 2 *Duer,* 577. For it is the duty of a vendor so to describe the property with perfect accuracy as not to leave anything to inference.

*Denny vs. Hancock*, 6 *Chy. Appeals*, 14, (*Law Rep.;*)
*Swaisland vs. Dearsley*, 29 *Beavan*, 433.

And where the contract is entered into under a *bona fide*
misapprehension in a material point, it will not be carried
into effect. *Cuff vs. Dorland*, 50 *Barbour*, 439; *Bascomb
vs. Beckwith*, 8 *Equity Cases*, (*Law Rep.*,) 108.

A defect in the title of a lease, to the extent of a third,
"would of itself justify a refusal to decree" a specific per-
formance. *Freetly vs. Barnhart*, 51 *Penn.*, 281.

Where, in a purchase, there is a matter on which a per-
son might, *bona fide*, make a mistake, and he swears posi-
tively he did make such mistake, and his evidence is not
disproved, a Court of Equity will not enforce specific per-
formance against him. *Swaisland vs. Dearsley*, 29 *Beavan*,
433.

As to the weight given in a suit for specific performance
to the oath of the defendant, see *Lamar vs. Dixon*, 6 *Eng-
lish Appeals, House of Lords*, 427. And taking possession
will make no difference if it were done without the know-
ledge of any defect of title. *Richmond vs. Gray*, 3 *Allen*,
25; *Story's Equity*, sec. 777 *a.*

What Mrs. Ellicott agreed to buy, was described in the
contract as "the Waverly property." The Waverly pro-
perty, "as visible to the eye," was the entire enclosure
within the four fences. It was represented, also, as hav-
ing a sufficient supply of water. Now, it is not pretended
that White, as vendor, ever gave notice of, or called any
attention to, the fact that to a large part of this enclosure
he had no title whatever.

Mrs. Ellicott's contract was for a deed in fee, subject to
a mortgage, and however others may have thought a lease
more beneficial, yet that was for *her* to consider and de-
cide. Complainant knew that he was contracting with a
married woman. He took special care to obtain her signa-
ture to the contract, yet took no care to obtain her assent
to, or to give her any knowledge of, so important a *parol*

deviation from it. No purchaser under a contract for a freehold can ever be compelled to take a leasehold. *Drewe vs. Corp,* 9 *Vesey,* 368.

*E. Beatty Graff,* for the appellee.

GRASON, J., delivered the opinion of the Court.

The record in this case discloses that a contract in writing was entered into by James P. Ellicott and the appellee, by which the former was to convey to the latter certain property in Carroll county, and the appellee was to convey to said James P. Ellicott his Waverly property in Baltimore county. This agreement was made by a proposition signed by James P. Ellicott, and dated August 31st, 1872, and an acceptance endorsed thereon by the appellee, on the second day of September in the same year. It appears that Fanny A. Ellicott and her husband, James P. Ellicott had been negotiating with Mr. Small for a sale of the Carroll county property to the Ashland Iron Company, before the above agreement was entered into, but no result had been reached at the time said agreement was made. The property of the appellee, in Baltimore county, was not particularly described in the agreement, but was mentioned therein as the "Waverly property." Mrs. Ellicott and her husband had examined the Waverly property before the date of the agreement, and found that the buildings were situated in a square lot of ground, three sides of which were bounded by public streets, and all of which was inclosed by fences as one lot. After the agreement between the parties was made, the appellee consummated a sale of the Carroll county land to the Ashland Iron Company; the deed to the company was executed by Mrs. Ellicott and her husband, and the purchase money was paid, fifteen hundred dollars thereof to Mr. Richmond, who held a lien thereon for purchase money, and the balance to Henry W. Ellicott, to hold until the title to the

Waverly property could be examined and made to Mrs. Ellicott. Mr. and Mrs. Ellicott, in the mean time, moved into the Waverly property, both believing that they were to receive a title for the entire square of ground as enclosed by the fences. There was a mortgage on the Waverly property of three thousand dollars, and Henry W. Ellicott, without any authority from Mrs. Ellicott, his sister-in-law, made an agreement with the appellee that the latter should pay off the mortgage, and, instead of giving a deed to Mrs. Ellicott in fee simple, which, under the first agreement, was to be conveyed, that he should execute a lease to her, reserving a rent of one hundred and eighty dollars a year.

The deed of this property, from Read to the appellee, was put into the hands of J. P. Ellicott and wife in order that the title to the Waverly property might be examined, and it was discovered that the appellee had no title whatever to five-twelfths of the property, but that it belonged to the heirs of a man by the name of Stout, who lived in the State of Delaware, and that such part was advertised for sale to pay taxes due thereon. It further appeared that the appellee had no title to that part by possession, he having inclosed it only within a year before the agreement for the exchange was entered into. Mrs. Ellicott and her husband immediately removed from the property, sent the key of the house to the appellee and gave him notice that the contract was abandoned, and that they had removed from the property, and that he could take possession thereof. The appellee afterwards executed a lease as proposed by Henry W. Ellicott, and tendered it to Mrs. Ellicott, for her execution, but she refused to execute it. He also called upon Henry W. Ellicott and demanded payment to him of that part of the purchase money of the Carroll county property which had been paid to him, stating that he intended to apply it towards the payment of the mortgage on the Waverly property. Henry W. Ellicott, however, refused to pay over said sum to the appellee, claiming that

he had received it for Mrs. Ellicott to hold until a good title to the Waverly property had been made to her. The appellee then filed his bill for a specific performance of the contract, and during the pendency of the suit the Waverly property was sold by the mortgagee for the payment of the mortgage debt of three thousand dollars. A supplemental bill was then filed, stating the sale of the Waverly property and praying compensation in money. The evidence is, in some respects, conflicting, but we think the facts, as heretofore stated, are substantially established by the weight of the evidence in the case. The agreement for the purchase of the Carroll county property from Richmond is made in the name of James P. Ellicott, but it is clear that it was purchased for his wife, Fanny A. Ellicott, and that the equitable title was in her, her husband acting merely as her agent in the purchase, and in making the offer of exchange as contained in the paper dated 31st August, 1872. The bill, in fact, states that she was the equitable owner of the Carroll county property, and for that reason it became, or was thought, necessary that she should sign an agreement for the exchange, and accordingly a new and confirmatory agreement was executed by her husband and herself on the 3rd day of September, 1872, a copy of which is filed with the bill of complaint.

Specific performance of contracts is within the discretion of the Courts, and it will not be decreed unless the contract is fair, just and reasonable in all respects and there be no doubt in the proof of any of its terms. The contract must be accurately stated in the bill and the proof must in every essential particular correspond with the terms of the contract thus set up. The proof must be clear and explicit, leaving no room for reasonable doubt. *Semmes vs. Worthington*, 38 *Md.*, 318. In this case the contract sought to be enforced is a contract that Fanny A. Ellicott was to take *a lease* of the Waverly property. The contract which she entered into was for a deed in fee of that

property. The subsequent arrangement for a lease was made by Henry W. Ellicott alone, and both he and Mrs. Ellicott swear most positively that he had no authority to make it, nor is this proof contradicted by any witness examined in the case. As she contracted for the fee and for no other estate in the property, and authorized no other person to make a different contract for her, no Court would compel her to accept a lease instead of a deed in fee. For this reason alone, if there were no other, this Court will not decree a specific performance of the contract set up in the bill, nor compensation to the appellee for the non-performance of that contract. But we think there is another good ground upon which the refusal of this Court to decree a specific performance or compensation can be rested. The contract made by Mrs. Ellicott was for the Waverly property, and she was permitted by the appellee to examine the property, without any explanation whatever that said property as offered to be conveyed did not include all the land inclosed as one lot within the fences around it. Any party examining the property and seeing the buildings standing upon a lot, which abutted upon three streets and was completely inclosed by fences as one entire lot, would naturally and reasonably suppose that it constituted but one parcel and that the whole was to pass with the buildings, unless informed to the contrary by the owner, whose duty we think it was to so inform Mrs. Ellicott, or unless information to the contrary was derived from some other source. In the case of *Denny vs. Hancock*, 6 *Law Reps. Chan. Appeals, pages* 13 *and* 14, Hancock had gone to inspect a piece of land, before it was offered at public sale, and carried a plan of it with him, and found the land inclosed by an iron fence with shrubs and trees standing inside the fence, and supposing that the fence was the boundary, bought the property. Finding, after the purchase, that the boundary line was not at the fence, but that it in fact ran through the shrubs and trees,

refused to take the property or to pay the purchase money, and the vendor filed a bill for specific performance. MELLISH, Justice, in delivering his opinion used the following language. "It appears to me that in a property like this,— a villa residence within a little more than a couple of acres of land, in the immediate neighborhood of London—any person, going to look at it, whether he carried a plan with him or not, would naturally assume as a matter of course, the existence of some fixed boundary, some fence apparently separating the property he was going to purchase, from the neighboring one, and that, therefore, when a gentleman went to inspect this property with the plan in his hand, and walked around the foot path going near the boundary, and in looking through the shrubs saw an iron fence, and no other fence of any sort or kind visibly bounding the property, he would naturally come to the conclusion that this iron fence was the boundary, and he never would think that anything else could be the boundary, nor would he be likely to feel any such doubt as would induce him to ask a question about it." The bill was accordingly dismissed.

The case now under consideration is almost identical in its facts, with that of *Denny vs. Hancock*. The Waverly property is within a short distance of the City of Baltimore, and three sides of it abutted on three public streets, and on all four sides it was separated from other property by fences which any one would naturally have supposed to be the boundaries of the property, and upon looking at it Mrs. Ellicott, even if she had had the deed from Read to the appellee in her hand, would never have doubted that the fences were the boundaries of the land she was about to purchase, and never would have thought of asking a question about it. The part to which the appellee had no title was five-twelfths of what Mrs. Ellicott supposed she was purchasing, and it came close up to the house, and she swears that she would not have agreed to purchase

had she known that she was not to get that part of the lot.

Where there is a substantial defect with respect to the nature, character, situation, extent or quality of the estate, which is unknown to the vendee, and in regard to which he is not put upon inquiry, a specific performance will not be decreed. 1 *Story's Eq.*, sec. 778, and the authorities there cited,

As the appellee, for the reasons stated, is not entitled to a specific performance in this case, he is not, as matter of course, entitled to compensation from Mrs. Ellicott for her failure to perform the contract set up in the bill, nor is he entitled to the money received by Henry W. Ellicott and now in his hands.

The decree appealed from will therefore be reversed and the bill of complaint dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 22nd June, 1875.)