**Dermot A. NEE and Antoinette K. Nee, Appellants,**

v.

**Joseph V. DILLON and Lois B. Dillon, Appellees.**

**No. 13196.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 26, 1956.

Decided Dec. 13, 1956.

**954**

Mr. Stephen G. Ingham, Washington, D. C., for appellants.

Mr. Joseph V. Dillon, appellee, pro se.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment of the District Court rescinding a contract for the sale of real estate and awarding the plaintiff-purchasers certain out-of-pocket expenses for improvements to the property.

The record presents a somewhat confused set of facts which may be briefly summarized as follows: On June 5, 1952, appellants, defendants below, entered into a contract to sell to the appellees an improved lot located in Maryland, at a price of some $42,000. At the time the contract was signed the residence on the real estate—evidently a large and attractive house—was 90 per cent completed. The contract was written on a form supplied by a real estate agent; stipulations were added regarding the completion of the house, a patio terrace, sodding, and other things. Subsequent to the original contract the parties executed an escrow agreement and appellees deposited with Suburban Title & Investment Corporation[1] the sum of $850.00, which was to be paid to the appellants upon completion of certain things mentioned in the agreement. The deed was executed on July 18, 1952, but apparently was not seen by the purchasers until sometime after July 30, 1952, the date of recordation. Upon examination of the deed the purchasers noticed a shortage as to the amount of land conveyed and made demand upon the sellers to make up the difference. An extended period of negotiations and attempts at settlement ensued, during which appellees sought to have remedied the shortage of land and other alleged failures on the part of appellants to perform according to the terms of the original contract and the escrow agreement. Finally, on November 17, 1953, appellees filed their complaint in the District Court seeking specific performance or, in the alternative, rescision and damages. Appellants counterclaimed for the amount deposited in escrow. Appellees moved into the property on July 17, 1952, and have occupied it continuously since then.

■ We note first of all that at the time the complaint was filed both plaintiffs and both defendants apparently were residents of Maryland, although one plaintiff and one defendant maintained business addresses in the District; that most if not all the witnesses were residents of Maryland; that the subject of

1. Named in the complaint as a defendant.

the litigation, the land, is located in Maryland; and that we are obliged to apply the principles of substantive law which would be applied by the Maryland courts if the litigation had been brought there.

In a situation of this sort we think the District Court should make inquiry at pre-trial or at the trial itself with respect to the reasons why the doctrine of *forum non conveniens* should not be applied, even though jurisdiction in the strict sense can be obtained here under established rules. Cf. Gross v. Owen, 1955, 95 U.S.App.D.C. 222, 221 F.2d 94. In matters of this kind, plaintiffs from other jurisdictions should normally resort to their own courts: the courts of the District of Columbia, burdened as they are, should not without good reason be asked to make inquiry concerning events happening outside their jurisdiction or enter decrees with respect to property located elsewhere.

The case having progressed this far, however, we will review it, and will apply Maryland law to the issues of substance. The principal question presented is whether the shortage of land justifies rescission. At the outset it appears questionable whether appellees have not waived whatever remedy they may have had in respect of the shortage. By letter dated November 12, 1952, some months after taking possession of the property and after the discovery of the shortage, the purchasers listed three items which they asserted were still to be done by appellants before final settlement could be reached. The shortage of land was not mentioned. The letter concluded, "As soon as these three items are completed, I shall be pleased to notify the Suburban Title Company to release the amount held in escrow." Nevertheless, the trial court concluded that the shortage of land was never waived. In the view we take of the case, however, it is not necessary to review the validity of this finding.

We turn to the evidence as to the shortage of land. The contract described the land in two ways. In the first blank of the printed form, calling for a description of the property, there appears the following: "Lot 4 and pt of 5, Plat of Burning Tree Valley, Lot 145 by 296." In the blank following the clause providing for a first deed of trust the property is thus described: "Lot 4 and part of 5, Plat of Burning Tree Valley being 145 ft deep on Beach Tree Road constituting 39,495 sq. ft." The deed represented the area of the property to be 37,967 square feet. From the evidence of a surveyor called by appellants the trial court concluded that the property in fact contains 38,495.41 square feet. There was thus a discrepancy of some 1,000 square feet between the amount specified by the contract and the amount actually conveyed by the deed.

 Since the contract was to be performed in Maryland, the law of that state governs the rights of the party claiming failure of full performance. Restatement, Conflict of Laws §§ 358, 370 (1934). The Maryland Court of Appeals long ago said that the rescission of an executed contract for the sale of real estate "is an exertion of the most extraordinary power of a Court of equity, a power that ought not to be exercised except in a clear case * * * never for alleged false representations unless their falsity is certainly proved, and unless the complainant has been deceived and *injured* by them." Cochran v. Pascault, 1880, 54 Md. 1, 13 (Emphasis in original). Here no fraud or intentional falsehood was alleged. Of course a shortage in the amount of land conveyed may in some circumstances warrant rescission. But the size of the shortage is not necessarily determinative. The significance of the variation "is to be measured by the special adaptability of the part of which [the purchaser] was deprived to the particular uses for which he had designed it and the primary consideration which induced him to enter upon the negotiation." Keating v. Price, 1882, 58 Md. 532, 537. Shortages justify rescission when the missing portions "so far affected the attractiveness of the place that it could reasonably be sup-

posed that but for such misrepresentations the contract would not have been made", or were an "inducement of the purchase." Reigart v. Fisher, 1925, 149 Md. 336, 347–348, 131 A. 568, 572. The Maryland courts have applied these standards both in suits for rescission and for specific performance.[2] Smith v. Bounds Package Corp., 1954, 206 Md. 74, 110 A.2d 71; Tolchester Beach Improvement Co. v. Boyd, 1931, 161 Md. 269, 156 A. 795, 81 A.L.R. 895; Keating v. Price, supra; Ellicott v. White, 1875, 43 Md. 145. The cases[3] cited by appellees are inapplicable: rescission was there allowed because the area of the property was crucial to the purchaser's intended use of the land.

■ In the instant case there was no finding that the statement in the contract as to the number of square feet went to the essence of the contract, nor would the evidence have supported such a conclusion. There is no evidence that the price of the property was computed on a square-foot basis. Nor does the evidence indicate along which boundaries the missing land lies. The lot is bounded on the west by an arc 145 feet long, on the north and south by straight converging lines measuring 356.14 and 296.25 feet, respectively. The east or rear boundary is 100 feet long. From the second description in the contract it might be thought that the missing 1,000 square feet comprised a narrow strip at the rear of the property. However, the first description in the contract specifies a boundary of 296 feet, which is in fact the length of the south boundary of the lot. Any addition of a strip at the rear would lengthen this south boundary beyond the measurements specified in the contract. It thus appears that no identifiable part of the property described in the contract was omitted from the conveyance. From the record it does not appear that the absence of the unidentifiable 1,000 square feet of land detracts from the actual enjoyment of the property conveyed, or that the precise square footage of the land was in any way a factor of substantial inducement in reaching agreement to purchase. The parties agreed to convey a certain piece of real estate. The purchaser Joseph Dillon testified that he saw the lot several times. The parties agreed on which piece of real estate was to be conveyed and it was conveyed. The record shows that the value of a piece of land containing 1,000 square feet, in the locality involved, could hardly exceed a few hundred dollars. Appellees' remedy at law would clearly be adequate, if indeed they are entitled to any damages on this score—a matter on which we do not pass.[4]

■■ We cannot agree with the trial court's suggestion that the indefiniteness of the provision of the escrow agreement concerning completion of the patio terrace was a ground for rescission. The indefiniteness of this term is not fatal to the enforcement of the contract's basic obligation, the conveyance of the property. The appellees are not precluded from proving by parol evidence the details of appellants' obligation in this respect and the damages suffered by reason of default. See 1 Corbin, Contracts § 95, (1950); 3 Corbin, Contracts § 579 (1951). Appellees do not urge that rescission should be awarded because of other alleged failures on the part of the vendors relating to proper completion of the house. Appellees' remedy at law for these matters is clearly adequate.

■ The judgment allowing rescis-

2. However, "a stronger case is requisite to establish a right to rescind than to defend against specific performance." Glendale Corp. v. Crawford, 1955, 207 Md. 148, 158, 114 A.2d 33, 38.

3. Hartsman v. Mueller, 1928, 195 Wis. 485, 218 N.W. 854; Younis v. Hart, 1943, 59 Cal.App.2d 99, 138 P.2d 323. No Maryland case is cited.

4. Cf. Brodsky v. Hull, 1950, 196 Md. 509, 77 A.2d 156; Tolchester Beach Improvement Co. v. Boyd, supra; Reigart v. Fisher, supra. See, generally, 8 Thompson, Real Property § 4580 (1940); 3 American Law of Property § 11.55 (1952).

sion must therefore be set aside. The award to the appellees for out-of-pocket expenses incurred on account of appellants' failure to finish the house as warranted appears amply supported in the record, and is affirmed. Upon remand the trial court may—subject to what is said herein—award such other damages as it deems lawful and proper in respect of grievances determined by the court to warrant relief at law.[5] In making these determinations the trial court may hear additional evidence or take other appropriate steps to effect a just settlement of the dispute. Cf. Uline v. Uline, 1953, 92 U.S.App.D.C. 281, 205 F.2d 870.

Affirmed in part, reversed in part, and remanded.

5. Some of appellees' claims for damages were apparently set off by the trial court against the value of the rent-free use of the property. Since rescission is not being allowed, these items remain to be calculated. We also note that were rescission proper, the rental value of a $42,-000 residence for three or four years would appear to exceed by far appellees' claims for "inconvenience and annoyance" against which the rental value was offset. Evidence of the rental value should have been included in the record. See Buchanan v. Lorman, 1845, 3 Gill., Md., 51, 58-59.