Allen R. HONIG, Petitioner,

v.

DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS, Respondent,

Minnesota Mining and Manufacturing Co. (3M), Intervenor.

No. 11344.

District of Columbia Court of Appeals.

Argued June 21, 1977.

Decided June 30, 1978.

David R. Taxin, Washington, D. C., for petitioner.

Ted P. Gerarden, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

James L. Hudson, Washington, D. C., with whom Ronald C. Jessamy, Washington, D. C., was on the brief, for intervenor.

Before KERN, GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

Petitioner was a Master Service Representative with Minnesota Mining and Manufacturing Company (3M) for several years and, after his employment was terminated, filed a complaint with the District of Columbia Office of Human Rights (OHR). He asserted he was discharged due to his personal appearance.[1] The employer, 3M, answered the complaint and sought dismissal on the grounds the petitioner was incapable of minimum performance levels and did not meet the minimal standards of personal care applicable to all employees. The employer also sought dismissal because petitioner lacked sufficient nexus to the District of Columbia for the OHR to assume jurisdiction. There followed a lengthy exchange of factual statements and legal positions emanating from petitioner and the employer directed to OHR. Ultimately, OHR issued findings and an order declining to exercise jurisdiction and dismissing the complaint for lack of "proper jurisdiction."

After noting there must be a "sufficient nexus" between the parties and the District of Columbia, OHR made these material findings:

(5) That the intent of the City Council, D.C., through Title 34, D.C.R.R. was to

---

1. 34 DCRR § 11.1 (1973).

secure an end to discrimination in the District of Columbia as interpreted by the OHR means acts, transactions, occurrences, practices and policies transpiring within the District or those transpiring without the District by persons, businesses, corporations, or agents upon whom the District has sufficient nexus to establish jurisdiction over the same.

(6) That the servicing of accounts within the District on orders or assignments originating outside the District; and the servicing of accounts of others assigned to those accounts but temporarily indisposed is not tantamount to nor sufficient to establish a fact of actual assignment of employment within the geographical boundaries of the District.

While the findings leave something to be desired from the standpoint of precision, it is evident that OHR declined to exercise jurisdiction principally because petitioner's presence in the District arose from occasional servicing of accounts here. For all other purposes, his actual assignment of employment was elsewhere.[2]

■ The Office of Human Rights asserts the City Council outlined a broad social policy of nondiscrimination and vested in the Office enforcement proceedings to achieve that goal. In so doing, states OHR, the Council conferred upon it the responsibility to decide initially whether to exercise jurisdiction over a complaint (34 DCRR § 31.2(b)).[3]

While § 31.2(b) does not expressly provide for prosecutorial discretion in the matter of exerting jurisdiction, it does state "the Office shall determine whether, in accord with its own rules, it has jurisdiction." This necessarily implies inherent discretionary power was intended by the Council.[4] A reading of § 35.2(a) confirms this view.[5] That section addresses enforcement by a private person. It provides that a person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in court for damages unless the individual has lodged a complaint with the Office. But the section goes on to state that if the complaint is withdrawn or if "the Office has dismissed such complaint on the grounds of administrative convenience" all rights to file a complaint in court are maintained (emphasis added). That section plainly envisages the authority to exercise prosecutorial discretion.

There is nothing novel about inherent authority in an administrative agency to exercise jurisdictional discretion in enforcing the public policy pronounced in its organic legislation. See, e. g., Pan American

2. His employment agreement was executed in Minnesota. He was supervised from New Jersey where his payroll and personnel records were maintained. His answering service was maintained in Maryland where his duties were performed principally.

3. That regulation provides:

(b) Within 120 days, after service of the complaint upon all parties thereto, the Office shall determine whether, in accord with its own rules, it has jurisdiction; and if so, whether there is probable cause to believe that the respondent has engaged or is engaging in an unlawful discriminatory practice. [Emphasis added.]

We note that at this late date, the Office has not yet promulgated its own Rules of Procedure, a serious administrative lack. Meanwhile, the Regulations have been reenacted by the Council into a statute and became the Human Rights Act of 1977 (24 D.C.Reg. No. 16, p. 2830). The new legislation closely tracks the Regulation which it superseded.

4. We refer in this opinion to the Regulations which were superseded in 1977 subsequent to this proceeding, see note 3, supra. We note that the Regulations to which we refer appear almost verbatim in the subsequent legislation.

5. That subsection provides:

(a) Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided that, where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who maintains in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this Title, may file the same complaint with the Office. [Emphasis added.]

*World Airways, Inc. v. C.A.B.*, 129 U.S.App. D.C. 159, 392 F.2d 483 (1968). Davis, Administrative Law § 4.07 (1958). *See also Colon v. State of New York, Division of Human Rights*, 354 F.Supp. 343 (S.D.N.Y. 1973), *aff'd*, 498 F.2d 1396 (2d Cir. 1974) (construing similar statute). From the legislative history available, it is apparent that the Council modelled the legislation procedurally after the National Labor Relations Act. The Legislative Report states:

> Procedurally, Title 34 is structured after the National Labor Relations Act and the commission functions in much the same way as the National Labor Relations Board. ["Legislative Report on Title 34, Human Rights Law," p. 2.]

The authority of the National Labor Relations Board to exercise prosecutorial discretion has long been recognized by the courts. *E. g., NLRB v. Denver Building Council*, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). Nevertheless, Congress enacted legislation in this area. In *NLRB v. National Survey Service, Inc.*, 361 F.2d 199, 203 (7 Cir. 1966), the court explained:

> In 1959, Congress recognized the Board's practice of limiting its caseloads by not asserting its jurisdictional authority to its limit. In order to have the "no man's land" of doubt between federal and state authority occupied, Congress enacted 29 U.S.C.A. § 164(c)(1), which provides that "The Board in its discretion, may, by rule of decision or by published rules * * decline to assert jurisdiction over any labor dispute * * * where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction * * *." In the event the Board declines jurisdiction, § 164(c)(2) authorizes state or territorial agencies to assert jurisdiction.[6]

The similarity to the Council's Regulations is apparent.

6. This is true also of the recently enacted human Rights Act of 1977, *supra*.

 We conclude that the Office's decision declining to assume jurisdiction in this case essentially for lack of a sufficient nexus with the District of Columbia was neither arbitrary, nor capricious, nor a clear abuse of discretion.[7]

*Affirmed.*

7. *See Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), in relation to the appropriate standard of review to be applied in circumstances such as this.