Cheryl MATTHEWS, Appellant,

v.

AUTOMATED BUSINESS SYSTEMS & SERVICES, INC., et al., Appellees.

No. 87–529.

District of Columbia Court of Appeals.

Argued March 24, 1988.

Decided May 24, 1989.

---

Ralph J. Temple, Washington, D.C., for appellant.

Kevin P. Chavous, Fairfax, Va., for appellees.

Before BELSON and TERRY, Associate Judges, and REILLY, Senior Judge.

TERRY, Associate Judge:

Appellant Matthews filed a four-count complaint in the Superior Court against appellees Automated Business Systems & Services, Inc. (ABSS), and its president and chief executive officer, Theodore Howard, alleging unlawful employment discrimination in violation of the District of Columbia Human Rights Act,[1] breach of contract, wrongful discharge, and interference with contractual relations. The trial court, on appellees' motion, dismissed one count of the complaint for lack of subject-matter jurisdiction[2] and the other three counts on the ground of *forum non conveniens*.[3] Appellant contends on this appeal that the factual findings on which the court based its dismissal were erroneous. Because the record fails to support the trial court's dismissal of the first count, we reverse that dismissal and remand this case for further proceedings. We also vacate the dismissals of the three remaining counts and direct the court on remand to reconsider the *forum non conveniens* issue in light of our ruling on subject-matter jurisdiction.

I

Cheryl Matthews was employed as an account manager by ABSS from February 22, 1983, until she was fired by Mr. Howard on October 4, 1985. ABSS, a District of Columbia corporation with its principal place of business in Riverdale, Maryland, provides automated data processing services to various governmental and private entities, including agencies of the federal government within the District of Columbia. Matthews' duties were to sell computer hardware, software, and services to ABSS customers. She was dismissed when she refused to sign a new proposed contract for fiscal 1986.

The first count of Matthews' complaint alleged that appellees had engaged in unlawful discrimination based on her age and sex in violation of the Human Rights Act. She claimed that her male counterparts received higher salaries and expense allowances than she did, even though she had a longer tenure at the firm. When she complained to Mr. Howard, she was allegedly told that she received a lower salary because she was younger than her colleagues and that, "as a female, she should 'work smart', and not just 'hard', referring to factors unrelated to her work for ABSS." Matthews based her breach of contract claim on ABSS' refusal to pay certain commissions and bonuses which she said were owed to her for her past sales performance. She also asserted that her discharge was wrongful because the new contract she was asked to sign violated the terms of her current contract and retroactively changed her sales quota and sales record. Finally, she maintained that Mr. Howard's discriminatory and unfair actions constituted an interference with her contractual relations with ABSS.

Appellees responded with a motion to dismiss based on, *inter alia*, lack of subject-matter jurisdiction and *forum non*

---

1. D.C.Code § 1–2501 *et seq.* (1987).

2. Super.Ct.Civ.R. 12(b)(1).

3. D.C.Code § 13–425 (1981).

*conveniens.* In support of the motion, appellees filed three affidavits, two by Mr. Howard and one by Elizabeth Simpson, Vice President of Administration at ABSS. These affidavits stated that the substantial part of ABSS' business was in Maryland and that its activities in the District of Columbia were limited. The affidavits also said that all of Matthews' employment contracts were negotiated, executed, and substantially performed in Maryland and that Matthews was assigned to work in Maryland, where her supervisors, her personnel records, and her business phone were all located. Finally, the Simpson affidavit stated that Matthews never performed any actual service work on the contracts for which she was responsible.

Matthews opposed the motion to dismiss and filed an affidavit of her own. In it she acknowledged that ABSS had its main office in Maryland but asserted that it was, and publicly held itself out to be, a District of Columbia corporation. Matthews stated that ABSS did indeed perform a substantial amount of business in the District, particularly installing on-site computer services for agencies of the federal government.[4] She estimated that between forty and sixty percent of her work was performed in the District of Columbia. Finally, Matthews said that the terms of her employment were substantially negotiated within the District and that some of the acts of alleged discrimination occurred in the District.

The trial court granted appellees' motion to dismiss the complaint. As to the first count, the court held that because Matthews' "actual place of employment was at all times in Maryland," there was not a sufficient nexus between Matthews and the District of Columbia to permit the court to entertain an action under the Human Rights Act. The court then dismissed the remaining three counts on the ground of *forum non conveniens* after balancing the private and public interests involved. In ruling that Matthews' minimal private interests were "heavily outweighed" by the District's public interest in not clogging its court calendars without good reason, the court reiterated that Matthews' "actual place of employment was at all times in Maryland."

## II

Matthews contends that the trial court erred in finding that she was employed "at all times" in Maryland solely on the basis of the Howard and Simpson affidavits. She claims that the facts set forth in her affidavit—that she performed a substantial amount of her employment in the District of Columbia, that she negotiated terms of her employment in the District, and that certain acts of employment discrimination took place in the District—should have been accepted as true by the trial court. We reject this argument because it fails to recognize the difference between Rule 12(b)(1) and Rule 12(b)(6): the trial court, in considering a motion under Rule 12(b)(1), was not required to assume the truthfulness of Matthews' affidavit. For a different reason, however, we hold that the trial court erred in dismissing the first count of the complaint for lack of subject-matter jurisdiction, and thus we reverse that dismissal and remand the case for further proceedings.

Though appellees sought to dismiss Matthews' complaint both for lack of subject-matter jurisdiction, Super.Ct.Civ.R. 12(b)(1), and for failure to state a claim upon which relief could be granted, Super.Ct.Civ.R.

---

**4.** Matthews estimated that during her employment ninety percent of ABSS' contracts came through the Small Business Administration's set-aside program for minority businesses, under which ABSS became a subcontractor to federal agencies and performed on-site work in the District of Columbia. She also claimed that, when she was hired, seventy-five percent of ABSS' work for the federal government was performed in the District, but that this figure had dropped to sixty percent at the time of her dismissal.

Mr. Howard asserted, however, that only seventy-five percent of ABSS' government contract work came through the SBA program, and that by April 1985 ABSS had "graduated" from the program and had not performed any contracts under it for over a year. Simpson's affidavit contained a numerical breakdown of how many ABSS employees were temporarily assigned to perform service work in the District of Columbia.

12(b)(6), the court dismissed the first count on only the former ground. These two subsections of Rule 12 differ in several respects, the most significant being that a court may review and weigh evidence only upon a Rule 12(b)(1) motion. *See Haase v. Sessions*, 266 U.S.App.D.C. 325, 328–329, 835 F.2d 902, 905–906 (1987); *Wilderness Society v. Griles*, 262 U.S.App.D.C. 277, 289–290 n. 10, 824 F.2d 4, 16–17 n. 10 (1987);[5] 2A J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.–1], at 12–45 to 12–46 (2d ed. 1987) ("MOORE'S FEDERAL PRACTICE"); 10 C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2713, at 612–613 (2d ed. 1983) ("WRIGHT & MILLER").[6]

■ When a court is presented with affidavits submitted by the parties on a Rule 12(b)(6) motion, the motion is converted to one for summary judgment, and the court looks to the affidavits to see whether there are any issues of material fact that require a trial. Super.Ct.Civ.R. 12(b), last sentence; *see International Underwriters, Inc. v. Boyle*, 365 A.2d 779, 782 (D.C.1976); *Doolin v. Environmental Power, Ltd.*, 360 A.2d 493, 496 n. 5 (D.C.1976). In so doing, the court views the evidence in the light most favorable to the party opposing the motion. *E.g., Williams v. Gerstenfeld*, 514 A.2d 1172, 1176 (D.C.1986).

■ The submission of affidavits, however, does not convert a Rule 12(b)(1) motion to one for summary judgment. *Haase v. Sessions, supra*, 266 U.S.App.D.

C. at 328–329, 835 F.2d at 905–906; 2A MOORE'S FEDERAL PRACTICE, *supra*, ¶ 12.07 [2.–1], at 12–48; 10 WRIGHT & MILLER, *supra*, § 2713, at 608–611 (citing cases). Rather, the court may conduct an independent review of the evidence submitted by the parties, including affidavits, to resolve factual disputes concerning whether subject-matter jurisdiction exists. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Wilderness Society v. Griles, supra*, 262 U.S. App.D.C. at 289 n. 10, 824 F.2d at 16 n. 10; *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Therefore, because the court dismissed Matthews' action on a Rule 12(b)(1) motion, it was not obliged to accept any of her allegations as true but was free to decide for itself whether it had jurisdiction based on the evidence presented by the parties. *See Timberlane Lumber Co. v. Bank of America*, 574 F.Supp. 1453, 1461 (N.D.Cal.1983), *aff'd*, 749 F.2d 1378 (9th Cir.1984), *cert. denied*, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).[7]

■ Matthews' contention that the court could not simply credit the affidavits submitted by appellees when her own affidavit established essential jurisdictional facts raises a different issue. Generally, the determination of jurisdictional facts is a matter for the court, not a jury, *see Williamson, supra*, 645 F.2d at 413, and the court has broad discretion in determining how to

---

5. Because Super.Ct.Civ.R. 12 is identical to its federal counterpart, Fed.R.Civ.P. 12, we may look to federal court decisions interpreting the federal rule as "persuasive authority in interpreting [the local rule]." *Vale Properties, Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n. 3 (D.C.1981) (citations omitted). As a general proposition, "we construe the rules of the Superior Court in light of the meaning of the corresponding federal rules, insofar as such interpretation is not contrary to binding precedent." *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 807 (D.C.1984) (citations omitted).

6. The other major difference is that a dismissal under Rule 12(b)(1), unlike Rule 12(b)(6), is not on the merits and is not given *res judicata* effect. 2A MOORE'S FEDERAL PRACTICE, *supra*, ¶ 12.07 [2.–1], at 12–45; 10 WRIGHT & MILLER, *supra*, § 2713, at 611–612.

7. A further distinction should be made concerning a Rule 12(b)(1) motion. Courts have recognized that such a motion may either assert that a lack of jurisdiction is apparent on the face of the complaint (a "facial attack") or rely on matters outside the complaint (a "factual attack"). When a party makes a facial attack under Rule 12(b)(1), the court treats the motion as one filed under Rule 12(b)(6) and must consider the allegations in the plaintiff's complaint as true. But when a movant attacks the factual basis upon which the opposing party alleges jurisdiction, as Matthews did in this case, the court is free to weigh the evidence itself, and no presumption of truthfulness attaches to the complaint. *See Williamson v. Tucker, supra*, 645 F.2d at 413; *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

proceed in finding such facts, including basing its decision on affidavits. *See Prakash v. American University,* 234 U.S. App.D.C. 75, 80–81, 727 F.2d 1174, 1179–1180 (1984). In some cases, however, a court may be required to provide a plaintiff with a hearing on the issue of jurisdiction, especially if the evidence presented in the affidavits is not sufficient, or if "the facts are complicated and testimony would be helpful." *Williamson v. Tucker, supra,* 645 F.2d at 414; *see Timberlane Lumber Co. v. Bank of America, supra,* 574 F.Supp. at 1461; Super.Ct.Civ.R. 43(e); *see also Prakash, supra,* 234 U.S.App.D.C. at 82, 727 F.2d at 1181 (evidentiary hearing necessary to resolve factual issues relating to diversity jurisdiction). While an evidentiary hearing would certainly have been "helpful" in this case, we need not decide whether one was required, for there is a more fundamental flaw in the trial court's ruling.

The trial court did not make any express factual findings. Rather, it summarized the facts as presented in the Howard and Simpson affidavits and then said, "Based on the facts and circumstances in the instant case, the Court concludes that plaintiff's actual place of employment was at all times in Maryland. Plaintiff's presence in the District of Columbia arose from the occasional servicing of accounts, and there is not a sufficient nexus to give the Court subject matter jurisdiction under Count I of the complaint." But this conclusion does not resolve the jurisdictional issue. Mat-

thews' affidavit specifically stated not only that "a substantial portion" of her work was "performed in the District of Columbia," but that the terms of her employment were "negotiated between [herself and Mr. Howard], in part, on a number of occasions when we were working in the District of Columbia." Most significantly, she alleged that some of the acts of sex discrimination alleged in the complaint occurred in the District of Columbia. The affidavits submitted by appellees did not contradict or refute that allegation.

■ The purpose of the Human Rights Act is "to secure an end *in the District of Columbia* to discrimination for any reason other than that of individual merit...." D.C.Code § 1–2501 (1987) (emphasis added). Discriminatory practices in employment are expressly made unlawful by D.C.Code § 1–2512 (1987). If the events alleged in Matthews' complaint occurred in the District of Columbia, they are subject to scrutiny under section 1–2512, regardless of whether her "actual place of employment" was in Maryland, the District, or both. Thus the critical factual issue bearing on jurisdiction is whether these events took place in the District.[8] Matthews' affidavit says that some of them did, but appellees' affidavits do not address this question. Because the trial court did not address it either and erroneously based its decision on the irrelevant factor of Matthews' "actual place of employment," we reverse its dismissal of the first count of the complaint.[9]

---

8. We assume, without deciding, that the District of Columbia Human Rights Act does not apply to acts occurring outside the District. *See District of Columbia v. Schwerman Trucking Co.,* 327 A.2d 818, 825 (D.C.1974) (District of Columbia Minimum Wage Act not applicable to work performed outside the District); *see also Boureslan v. Aramco,* 857 F.2d 1014 (employment provisions of federal civil rights act do not apply to acts of American employers outside the United States), *rehearing en banc granted,* 863 F.2d 8 (5th Cir.1988). Whether it has extraterritorial application is ultimately a question of legislative intent, which is not before us in this appeal. *See Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949); *United States v. Mitchell,* 553 F.2d 996, 1002 (5th Cir. 1977); *District of Columbia v. Schwerman Trucking Co., supra,* 327 A.2d at 823–824.

9. We cannot affirm the dismissal on the ground that the trial court "reached the right result [for the] wrong reason," as our concurring colleague suggests. *Post* at 1183. A dismissal on the ground of *forum non conveniens* is always a discretionary decision by the trial court. In this case, however, only counts II, III, and IV were dismissed on that ground; count I was dismissed solely for lack of subject-matter jurisdiction. Consequently, since the trial court did not exercise its discretion by dismissing count I on the ground of *forum non conveniens,* there is no discretionary decision for us to review, and hence no alternative basis on which we may affirm. We cannot conclude that such a dismissal, if made, would not have been an abuse of discretion. To attempt such a conclusion would be to substitute our discretion for that of the trial court, which an appellate court may not do.

## III

■ The trial court's conclusion that there was "not a sufficient nexus" to give it subject-matter jurisdiction was apparently based on a misreading of this court's decision in *Honig v. District of Columbia Office of Human Rights*, 388 A.2d 887 (D.C.1978). In *Honig* we affirmed a decision by the Office of Human Rights (OHR) in which it declined to exercise jurisdiction over a discrimination claim against a foreign corporation brought by a petitioner whose District of Columbia contacts were minimal. The trial court read *Honig* as requiring persons who sue under the Human Rights Act to have a sufficient nexus with the District in order to provide a District of Columbia court with jurisdiction, and concluded that Matthews did not establish this nexus. We hold that *Honig* does not require such a nexus before a plaintiff may bring an action in the courts under the Human Rights Act.

In *Honig* a former employee of a Delaware corporation filed a complaint with the OHR, alleging that he had been fired in violation of the predecessor of the current Human Rights Act. Mr. Honig had been hired in Minnesota and was supervised from New Jersey, where his payroll and personnel records were maintained. His actual duties were performed principally in Maryland, though he occasionally did some work in the District of Columbia. The OHR found that the servicing of accounts in the District of Columbia on orders originating elsewhere did not establish actual employment within the District. Concluding on these facts that Honig had failed to prove that his employment had a "sufficient nexus" to the District of Columbia, the OHR "declined to exercise jurisdiction because petitioner's presence in the District arose from occasional servicing of accounts here. For all other purposes, his actual assignment of employment was elsewhere." *Id.* at 888 (footnote omitted). We affirmed this ruling as a discretionary decision entrusted to the OHR by statute, specifically by language authorizing the OHR

to dismiss a complaint "on the grounds of administrative convenience." [10]

The trial court erred in viewing our opinion in *Honig* as establishing a "nexus" test which plaintiffs must meet before a court may exercise jurisdiction over their discrimination claims. *Honig* deals exclusively with the issue of administrative agency discretion, a subject of no relevance to the Superior Court. While the OHR may decide in its discretion not to entertain a complaint for administrative reasons, the Superior Court cannot decline to consider a complaint which properly alleges the necessary jurisdictional facts. This distinction is important because a person claiming a violation of the Human Rights Act has a choice between filing a complaint before the OHR and bringing an original action in the Superior Court under D.C.Code § 1–2556 (1987). Indeed, we recognized in *Honig* that "enforcement by a private person" may still be available even if the OHR declines, in its discretion, to exercise jurisdiction. 388 A.2d at 888; *accord, Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C.1981).

Thus we hold that *Honig* imposes no jurisdictional test for actions in the District of Columbia courts under the Human Rights Act. The trial court's reliance on *Honig* in this regard was erroneous.

## IV

■ Matthews also contends that the trial court erred in dismissing her other three counts on the ground of *forum non conveniens*. Again she bases her argument on the premise that the facts are as she alleged them to be in her affidavit. Although we make an independent evaluation of a trial court's ruling on a *forum non conveniens* motion, *Jenkins v. Smith*, 535 A.2d 1367, 1369 (D.C.1987) (en banc), we nonetheless afford deference to that ruling. We will reverse it only on a clear showing that the trial court has abused its broad discretion. *Mills v. Aetna Fire Un-*

10. The same language appears in the current version of the Human Rights Act. D.C.Code § 1–2556(a) (1987).

*derwriters Insurance Co.,* 511 A.2d 8, 10 (D.C.1986); *Asch v. Taveres,* 467 A.2d 976, 978 (D.C.1983). Such reversals are extremely rare. *Jenkins v. Smith, supra,* 535 A.2d at 1370.

We cannot say that the trial court abused its discretion in dismissing Matthews' remaining claims on the ground of *forum non conveniens.* The trial court carefully balanced the private and public interests in maintaining the action in the District and noted that Matthews had an alternate forum for her non-statutory claims, a prerequisite to *forum non conveniens* dismissal. *Mills, supra,* 511 A.2d at 13; *see Carr v. Bio–Medical Applications of Washington, Inc.,* 366 A.2d 1089, 1093 (D.C.1976). The court's entire analysis, however, was based on its earlier conclusion that Matthews' place of employment was at all times in Maryland. Since we have held this conclusion to be inadequate as a basis for dismissal of the first count of the complaint under Rule 12(b)(1), we deem it "just in the circumstances" [11] to vacate the dismissal of the remaining counts as well. On remand, the trial court should reconsider the *forum non conveniens* issue in light of our holding that subject-matter jurisdiction exists under count one. We invite the court's attention, in particular, to our observation in *Sartori v. Society of American Military Engineers,* 499 A.2d 883, 886 (D.C. 1985), that the District of Columbia "has a legitimate interest in providing a forum for the enforcement of its laws to District of Columbia corporations."

## V

We reverse the trial court's dismissal of Matthews' discrimination claim for lack of subject-matter jurisdiction. We vacate the dismissals of the remaining claims on the ground of *forum non conveniens* and remand this case to the trial court for further proceedings consistent with this opinion.

*Reversed in part, vacated in part, and remanded.*

11. D.C.Code § 17–306 (1981).

REILLY, Senior Judge, specially concurring:

As I agree with that portion of the majority opinion which recognizes that the dismissal of the second, third, and fourth counts of the complaint on the ground of *forum non conveniens* was not an abuse of discretion and see nothing in the order of remand which would preclude the trial court from also dismissing the first count for that very same reason, I feel compelled to concur.

It does seem to me, however, that the majority opinion in calling the attention of the trial court to our observation in *Sartori v. Society of American Military Engineers,* 499 A.2d 883, 886 (D.C.1985), overlooked the fact that the court below was fully aware of *Sartori* and ably distinguished it from the case before us in its memorandum opinion. Appellant does indeed contend that any company incorporated in the District of Columbia cannot validly object to being sued in the courts of that jurisdiction. A similar contention, however, was rejected by us in *Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810, 815 (D.C. 1974), where we held that the place of incorporation was an "irrelevant consideration" in determining a *forum non conveniens* issue. *See also Nee v. Dillon,* 99 U.S.App.D.C. 332, 334, 239 F.2d 953, 955 (1956). The *Sartori* decision did not overrule *Frost,* nor did it impair the doctrine that local statutes regulating conditions of employment have no extra-territorial application. *District of Columbia v. Schwerman Trucking Co.,* 327 A.2d 818, 825 (D.C. 1974).

While I do not quarrel with the majority holding that the trial court incorrectly resolved the subject-matter jurisdictional issue, it does seem to me that undue significance is attached to allegations in plaintiff's affidavit that the terms of employment were negotiated between herself and the principal defendant in part on a number of occasions when they were together in the District. But how one party can call an employment contract, which that very party refused to sign, the product of a negotia-

tion is difficult to understand. The affiant's assertion that some of the acts of sex discrimination occurred in the District amounts to nothing more than a vague conclusionary allegation. Any description of the facts which constituted "acts of sex discrimination" is conspicuously lacking.[1]

Be that as it may, however, the majority opinion concedes that on the pleadings and affidavits, the trial court was justified under a Rule 12(b)(1) motion in finding that plaintiff was a Maryland resident and that her "actual place of employment was at all times in Maryland." On this basis, the trial court then reached the conclusion that a sufficient nexus to give the trial court jurisdiction over Count I was lacking, citing as controlling the *Honig* case, 388 A.2d 887 (D.C.1978). The majority opinion disagrees with this conclusion only, pointing out that *Honig* simply sustained the right of the Human Rights Commission to dismiss a complaint on the grounds of "administrative convenience" under D.C.Code § 1–2556(a).

Thus, what we deem error in the trial court's disposition of the case is solely its dismissal on jurisdictional grounds. But even if a trial court has jurisdiction, there is no provision in the Human Rights Act which would prevent it from refusing to entertain a complaint based in part on its provisions where all the grounds for invoking the doctrine of *forum non conveniens* are present. This appears to be the situation here. Thus, although the lower court was probably wrong in regarding itself bound by *Honig*, it was still free on the motion before it to conclude the case should more appropriately have been filed in the courts of Maryland.

In my view, a wiser disposition of this case would be to affirm, rather than to reverse and remand, on the ground that the trial court reached the right result even though it gave the wrong reason for its action. Affirmance on such grounds is certainly within the scope of our authority. In distinguishing the scope of review over administrative agencies and the disposition of appeals from a trial court, the Supreme Court in the leading case of *Securities & Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), reiterated this principle:

> In confining our review to a judgment upon the validity of the grounds upon which the Commission itself based its action, we do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct "although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate.

As this court put it in a more recent decision, *Karath v. Generalis*, 277 A.2d 650, 653 (D.C.1971):

> [I]t is not necessary for a trial court to make findings and if the record discloses some valid ground for supporting its judgment, it should not be disturbed on appeal.

---

1. This allegation in the affidavit refers to two designated paragraphs in the complaint, only one of which alleges any facts, *viz.*, No. 13, saying that on one occasion she complained to Howard about not being paid as well as the male account managers, and that he replied that they were older and she should work "smart" and not just "hard." While this explanation might be interpreted as revealing an improper policy, it was certainly not an act of discrimination, but rather an attempt to justify conduct already in effect. Hence, the affidavit raises no issue of disputed fact.