Louis MONTEILH, Appellant,

v.

AFSCME, AFL–CIO, Appellee.

No. 06–CV–1155.

District of Columbia Court of Appeals.

Argued Jan. 16, 2008.
Decided Sept. 17, 2009.

Harry J. Jordan, for appellant.

Andrew D. Roth, with whom W. Gary Kohlman, Washington, DC, was on the brief, for appellee.

Before KRAMER, FISHER, and BLACKBURNE–RIGSBY, Associate Judges.

KRAMER, Associate Judge:

After a career marked by a number of thwarted career advancement attempts, Louis Monteilh sued employer American Federation of State, County, and Municipal Employees, AFL–CIO (AFSCME), which is headquartered in the District of Columbia, alleging unlawful employment discrimination and retaliation in violation of the District of Columbia Human Rights Act (the DCHRA).[1] At the Superior Court level, AFSCME moved for dismissal for lack of subject matter jurisdiction under Super. Ct. Civ. R. 12(b)(1). After an evidentiary hearing,[2] the trial court grant-

---

1. D.C.Code § 2–1401 et seq. (2001).

2. Though the trial court need not hold an evidentiary hearing on a Super. Ct. Civ. R. 12(b)(1) motion, the parties requested one to

ed AFSCME's motion, reasoning that since Monteilh had never worked in the District and the alleged discriminatory acts "affect[ed] no job position or application for employment in the District" by Monteilh, the DCHRA did not apply to his claims. Monteilh appeals.

■■■ "The issue of subject matter jurisdiction is a question of law. Therefore, our standard of review is *de novo*." *Am. Univ. in Dubai v. D.C. Educ. Licensure Comm'n*, 930 A.2d 200, 207 n. 17 (D.C. 2007). Sometimes, however, a factual inquiry is necessary before the trial court may determine whether it has jurisdiction. *See Matthews v. Automated Bus. Sys. & Servs.*, 558 A.2d 1175, 1179 (D.C.1989). We will review the court's factual findings under the "clearly erroneous" standard. *Davis v. United States*, 564 A.2d 31, 35 (D.C.1989) (en banc). For the reasons explained below, we reverse.

## I. Background

In 1976, Louis Monteilh was hired as an AFSCME union organizer and field representative. He has never performed any work, nor applied for any position, within the District of Columbia. However, AFSCME is headquartered in the District and does extensive business here, including oversight of the regional offices for which Monteilh has worked. During the time he worked for AFSCME, Monteilh was never promoted to management, despite repeatedly applying for management positions. He alleges that he was turned down for one such position as a result of race and age discrimination. He also alleges that he was transferred from his job in California, where he made his home, to a new job in Georgia in retaliation for having filed a grievance over the alleged discrimination. He also alleges a series of

hardships, including audits of reimbursement requests, continuing racial and age discrimination, and disciplinary action against him, all of which he claims were retaliatory and have been directed at him from AFSCME headquarters in the District.

It is a violation of the DCHRA for an employer "[t]o fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion" for a discriminatory reason based upon "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation. . . ." D.C.Code § 2–1402.11(a)(1). It is also unlawful under the DCHRA "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of" any right granted or protected under the statute. *Id.* at § 2–1402.61(a). Finally, D.C.Code § 2–1403.16(a) gives employees alleging violations of the Act the right to file a private cause of action as an alternative to pursuing administrative remedies.

Monteilh brought such a suit in 2005, alleging discrimination on the basis of age and race, as well as unlawful retaliation. At the evidentiary hearing, AFSCME presented evidence that most of the decisions Monteilh alleges as discriminatory were made by personnel outside the District, with personnel at the District office merely ratifying the decisions. AFSCME argued that these could not reasonably be considered instances of discrimination in the District of Columbia. The trial court did not address this particular issue, finding instead that "some" other acts of alleged

assist the court in its fact finding relevant to the jurisdictional issue.

discrimination took place in the District. In particular, the trial court found that the decisions to transfer Monteilh from California to Georgia and to audit his supplemental moving expenses "were in fact made by AFSCME personnel in the District of Columbia." The court also found "that final personnel decisions are at least approved or endorsed at headquarters." Neither side challenges these findings that some of the allegedly discriminatory events happened in the District. Nonetheless, despite finding that at least some possibly discriminatory acts occurred here, the trial court determined that there was no subject matter jurisdiction under the DCHRA and dismissed Monteilh's suit.

When making its decision, the trial court posed the following question:

> [D]oes it violate the DCHRA for an employer to make discriminatory decisions at its national headquarters in the District of Columbia, even though the effect of those decisions is felt by the employee exclusively outside the District, and even though the decisions affect no job position or application for employment in the District?

Correctly noting that "[w]hat case law there is does not firmly answer this question," the court engaged in thoughtful analysis and answered the question in the negative. It therefore dismissed the complaint for lack of subject matter jurisdiction.

## II. Discussion

■ In seeking reversal, Monteilh urges us to apply the rule articulated in *Matthews v. Automated Bus. Sys. & Servs., Inc.*, 558 A.2d 1175 (D.C.1989). In that case, the only one in which we have squarely confronted the issue of subject matter jurisdiction under the DCHRA, the trial court had dismissed the plaintiff's complaints against her District employer because her actual place of employment was at all times in Maryland. We reversed, concluding that her claims were cognizable under the DCHRA "whether her 'actual place of employment' was in Maryland, the District, or both." *Id.* at 1180 (quoting the trial court order). Jurisdiction, we held, turns not on the place of employment but on where the events alleged to be discriminatory took place. "[T]he critical factual issue bearing on jurisdiction" was whether the discriminatory acts or events alleged had "occurred" in the District. *Id.*

AFSCME notes correctly, however, that *Matthews* does not control this case because the facts alleged there are distinguishable enough from Monteilh's to raise questions about the intended scope of the holding. Matthews was employed in Maryland but did some of her work in the District; also, her allegations included instances of sex discrimination, some of which occurred in the District. We held that, because the discrimination happened in the District, there was subject matter jurisdiction under the DCHRA, but our decision did not make clear what the dispositive facts were. We did not explain, for instance, whether the plaintiff's substantial work contacts with the District were material, or the fact that the discrimination alleged—sex discrimination—had likely effects experienced in the District.[3] AFSCME also quotes DCHRA language that it argues manifests an intent to limit the scope of the statute's protections to employees who have either worked in or

---

**3.** We know little of the factual record in *Matthews*, but, as AFSCME notes, the discriminatory statements and attitudes were likely directed toward Matthews while she was in the District. This would make the location of the discriminatory conduct and the place the discrimination was felt one and the same, unlike the situation Monteilh faced.

sought to work in the District. *See* D.C.Code § 2–1402.01 (2001) (emphasis added) ("Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life *of the District* and to have an equal opportunity to participate in all aspects of life, including ... in employment."). The trial court viewed this language as indicating an intent to put an end to discrimination only when the effects of such alleged discrimination are felt in the District.

But while the *Matthews* decision does not decide the issue before us, its broad rejection of the requirement that the "actual place of employment" be in the District before jurisdiction under the DCHRA may be asserted in court, *id.* at 1180, is language we may not simply ignore. In stating that "the critical factual issue bearing on jurisdiction is whether the[ ] events [alleged in Matthews' complaint] took place in the District," *id.* at 1180, the court almost certainly had in mind its earlier recitation, *id.* at 1177, of the multiple alleged discriminatory acts by the employer that made up count one of the complaint. *Matthews* thus constitutes a necessary part of the legal context in which we decide the issue before us. At least one other court has read it as teaching that "the most important factor in determining whether a court has subject matter jurisdiction over a claim filed pursuant to the DCHRA" is the location of the discrimination. *Quarles v. Gen. Inv. & Dev. Co.*, 260 F.Supp.2d 1, 20 (D.D.C.2003).

■ With *Matthews* as background, we hold that recognizing jurisdiction under the DCHRA where actual discriminatory (and/or retaliatory) decisions by an employer are alleged to have taken place in the District is most faithful to the statutory language and purpose. As set forth earlier, § 2–1402.11(a)(1) announces a broad prohibition against acts by an employer that in any manner ("or otherwise") "discriminate against any individual" concerning employment based upon enumerated protected categories. "The DCHRA was passed to 'underscore the Council's intent that the elimination of discrimination within the District of Columbia should have the highest priority,'" *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 732 (D.C.2000) (emphasis added) (quoting *Dean v. District of Columbia*, 653 A.2d 307, 319 (D.C.1995)), and we have not heretofore suggested that the discrimination intended was only that whose effects an employee has experienced inside the District. To the contrary, it would be counter to the injunction that the DCHRA, as "a remedial civil rights statute," "must be generously construed," *Executive Sandwich Shoppe, Inc.*, *supra*, 749 A.2d at 731, to place beyond its reach a discriminatory decision made in the District because the effects—say, a lost job or promotion—were felt only elsewhere by the employee. The gravamen of the statutory proscription is discrimination as defined; the happenstance of where the conduct works its consequences was not reasonably meant by the Council to be "the critical factual issue." *Matthews*, *supra*, 558 A.2d at 1180.[4]

We base our decision on the premise stated by the trial court—that the employer has made a discriminatory decision in the District of Columbia, although the effects have been felt elsewhere. It would not be enough to establish subject matter jurisdiction under the DCHRA simply to

4. *Judkins v. Saint Joseph's College of Maine*, 483 F.Supp.2d 60 (D.Me.2007), on which AFSCME chiefly relied at oral argument, is easily distinguishable because Maine's anti-discrimination statute explicitly limited its scope to claims by Maine inhabitants for violations that take place in Maine. *See id.* at 65.

show that the company is headquartered here or has offices here. Either the decision must be made, or its effects must be felt, or both must have occurred, in the District of Columbia.

We cannot tell from the present record whether the court's factual findings are sufficient to support subject matter jurisdiction over all of appellant's claims. For the foregoing reasons, the judgement of the trial court is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*